UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA *ex*                    CIVIL ACTION
*rel.* GREGORY GUTH


VERSUS                                           NO: 13-6000


ROEDEL PARSONS KOCH BLACHE                       SECTION: R(3)
BALHOFF & McCOLLISTER

<u>**ORDER AND REASONS**</u>

Before the Court is defendant Roedel Parsons' motion to dismiss plaintiff Gregory Guth's Complaint and First Amended Complaint.[1] For the following reasons, the Court GRANTS Roedel Parsons' motion to dismiss.


I.   **BACKGROUND**

This is a *qui tam* action brought by Gregory Guth ("Relator") on behalf of the United States Government under 31 U.S.C. § 3729, *et seq*. The claim arises out of a dispute between Relator and the State of Louisiana (through Louisiana State University ("LSU")), and its counsel, Roedel Parsons Koch Blache Balhoff & McCollister.

---

[1] Guth filed his First Amended Complaint after Roedel Parsons filed its motion to dismiss, but the Court will construe Roedel Parsons' motion to dismiss as applying to both Guth's Complaint and First Amended Complaint as Roedel Parsons addresses both in its memorandums in support of its motion to dismiss. *See* R. Doc. 30 at 1 ("Counsel for Roedel Parsons notes that he has already addressed the effect of the First Amended Complaint on Roedel Parsons' pending Motion to Dismiss in Roedel Parsons' Reply Memorandum (Rec. Doc. 28 at footnote 9).").

After Hurricane Katrina, the United States Department of Housing and Development made available federal funds to the City of New Orleans through the Community Development Block Grants program.[2] The City designated a portion of these funds for the expropriation of property and other expenses related to the design and construction of a veterans association medical center in New Orleans and a teaching hospital for LSU.[3] On April 30, 2007, the City entered into a Cooperative Endeavor Agreement with LSU, which authorized LSU to expropriate property for the hospitals.[4] LSU hired Roedel Parsons as counsel to handle the expropriations and other acquisitions of property for the project.[5] At the time, Relator owned property and a business within the relevant area subject to expropriation.[6]

In his original complaint, Relator asserted claims against both LSU and Roedel Parsons. Since the original filing, Relator voluntarily dismissed LSU from this case.[7] The following discussion will focus on the claims asserted against Roedel Parsons as the sole remaining defendant in this action.

---

[2] R. Doc. 1 at 3.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] R. Doc. 23.

Relator's Complaint and First Amended Complaint allege that Roedel Parsons violated the False Claims Act by taking and acting upon indefensible legal positions in order to generate additional fees for which it could bill the government, and by engaging in double-billing practices.[8] According to Relator, both practices constitute false claims under the FCA.

First, Relator alleges that despite legal requirements that mandate negotiations with property owners before the government files an expropriation suit, Roedel Parsons refused to engage in good faith pre-suit negotiations with property owners in order to generate additional fees from expropriation litigation and to shift expropriation costs from LSU to the City, which would bear every judgment.[9] According to Relator, Roedel Parsons took the position that a property owner could be reimbursed for only the greater of the value of his property or the value of his business, but not both.[10] Relator argues this "had no legal basis or support in law or fact."[11]  Relator further alleges that when property owners counterclaimed for more money in expropriation proceedings, Roedel Parsons forced them to go to trial. Accordingly, Relator alleges that these facts mean that "legal bill(s), timesheet(s), memoranda,

---

[8] R. Doc. 1 at 4-8.

[9] *Id.* at 6.

[10] *Id.* at 4-5.

[11] *Id.*

and/or other document(s) submitted for work and/or payment
necessitated by this legal position ... constituted a false
claim."[12]

Second, Relator alleges that Roedel Parsons engaged in double-
billing for legal work in connection with the expropriation matters
by unnecessarily assigning and sending multiple attorneys to
prepare for, travel to and from, and attend court hearings.[13] Again,
Relator argues that Roedel Parsons' submission of "bill(s),
timesheet(s), memoranda, and/or other document(s) submitted for
payment and/or reimbursement" constituted a false claim in
violation of the FCA.[14]   Third,  Relator asserts that Roedel
Parsons' alleged double billings resulted in double payments to
Roedel Parsons, which created obligations on the firm to refund the
double payments, either as payments to which Roedel Parsons was not
entitled, or as Community Development Block Grant income, which was
required to be returned, all in violation of 31 U.S.C. §
3729(a)(1)(G).[15]

---

[12] *Id.* at 6.

[13] *Id.*

[14] *Id.* at 7.

[15] R. Doc. 32 at 3-4.

Fourth, Relator alleges that, by engaging in the foregoing conduct, Roedel Parsons engaged in a conspiracy to defraud the government in violation of the False Claims Act.[16]

Roedel Parsons filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud.[17] Roedel Parsons contends that Relator fails to allege that it made any false communication or false statement.[18] Roedel Parsons also argues that Relator's complaint fails to meet the Rule 9(b) pleading standard for allegations of fraud because it fails to indicate what was communicated, when it was communicated, where it was communicated, or how it was communicated.[19]

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the

---

[16] *Id.* at 2.

[17] *See* R. Doc. 13.

[18] *Id.* at 9.

[19] *Id.* at 11.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). The Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 256. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Block*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

Claims under the False Claims Act must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Rule 9(b) requires a party alleging fraud or

6

mistake to "state with particularity the circumstances constituting fraud or mistake." This standard supplements the pleading requirements of Federal Rule of Civil Procedure 8(a), and together the two rules necessitate that a plaintiff supply "simple, concise, and direct" allegations of the circumstances amounting to fraud. *Grubbs*, 565 F.3d at 186. These allegations "must make relief plausible, not merely conceivable, when taken as true." *Id.; see also Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 570.

In order to plead fraud with particularity, "a plaintiff must state the factual basis for the fraudulent claim with particularity and cannot rely on speculation or conclusional allegations." *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008). In general, such a statement should include the "time, place, and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Grubbs*, 565 F.3d at 186 (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Group.*, 193 F.3d 304, 308 (5th Cir. 1999)); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

In certain circumstances, the pleading requirements of Rule 9(b) may be relaxed slightly, and the plaintiff may plead on information and belief, in particular when facts about the fraud are "peculiarly within the perpetrator's knowledge." *United States*

7

*ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (quoting *Russell*, 193 F.3d at 308); *see also United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 454 (5th Cir. 2005). This latitude "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Thompson*, 125 F.3d at 903 (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

## III. DISCUSSION

The False Claims Act, 31 U.S.C. § 3729, *et seq.*, "permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 941 (1997). When non-governmental parties, called "relators," file FCA claims, they prosecute the case on behalf of the government and in turn receive a percentage of any recovery that might result from a successful suit. 31 U.S.C. § 3730 (d)(1)-(4).

In his Complaint and First Amended Complaint, Relator alleges violations of four different provisions of the FCA.[20] The first provision, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon any

---

[20] The subsections of § 3729 were reorganized by statute in 2009 as part of the Fraud Enforcement and Recovery Act of 2009. *See* Pub. L. No. 111-21, 123 Stat. 1617, 1621-22 (2009). References will be to the current version of the statute.

8

person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government. The second provision, section 3729(a)(1)(B), imposes liability upon any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." The third provision, section 3729(a)(1)(G), imposes liability upon any person who

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

The fourth provision, section 3729(a)(1)(C), imposes liability upon any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)" of section 3729(a)(1).

The statute states that with respect to "information," the words "knowing" and "knowingly" mean that a person either "has actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The mental-state requirement of the FCA requires nothing more. *Id.* § 3729(b)(1)(B).

**A. Defendant's Alleged Over-Billing Strategy**

Relator claims that Roedel Parsons refused to engage in good faith pre-suit negotiations and then refused to settle counter-

claims in order to generate additional fees and to shift expropriation costs from LSU to the City of New Orleans. Relator alleges that this conduct, "being contrary to law," "constituted fraud."[21] Relator alleges that all related legal bills, time sheets, and other documents submitted by Roedel Parsons are false claims under the FCA. Presumably, Relator makes this claim under sections 3729(a)(1)(A) and (B) of the FCA. To state a claim under sections 3729(a)(1)(A) and (B), Relator must allege that there was a false statement or fraudulent course of conduct, made or carried out with the requisite scienter, that was material, and that caused the government to pay money or to forfeit moneys. *United States ex rel. Longhi v. Lithium Power Techs.*, 575 F.3d 458, 467 (5th Cir. 2009). The Court finds that Relator fails to satisfy the pleading standards of Rule 12(b)(6) and Rule 9(b).

### i. Relator Fails to Allege Sufficient Facts to Support the Existence of a False Claim or Fraudulent Course of Conduct

Relator fails to plausibly allege the existence of a false claim or fraudulent course of conduct as required under section 3729(a)(1)(A) and (B). Nowhere does Relator claim that Roedel Parsons' bills were false because they were inaccurate, or that the work was not actually performed. Instead, Relator conclusorily alleges that these bills or records were false because they were

---

[21] R. Doc. 1 at 6.

the product of a design to generate fees by taking an untenable legal position. Standing alone, this is insufficient to allege a false claim or fraudulent course of conduct.

The Court first considers Relator's allegation that Roedel Parsons consistently refused to settle expropriation claims without a legal basis for doing so. Relator provides no facts to support his contention that this conduct was fraudulent. Instead, Relator supports his allegations with legal conclusions and conclusory statements. Relator's contention that the conduct "constituted fraud" because it was "contrary to law" is a legal conclusion, which the Court need not accept as true.[22] *See Iqbal*, 556 U.S. at 678. Moreover, to the extent Relator alleges false claims predicated on legal violations, including violations of OMB Circular A-87, the federal regulations of HUD and the Community Development Block Grants program, and the Code of Professional Conduct for attorneys, Relator's claim fails because he has not alleged that Roedel Parsons falsely certified compliance or that a certificate of compliance was a requirement for Roedel Parsons to receive payment. *See United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) ("The linchpin of an FCA claim resting on a violation of a statute or regulation ... is the requirement of a certificate of compliance.").

---

[22] *Id.*

11

Relator's assertion that Roedel Parsons' legal strategy was undertaken with the intent "to maximize the legal billings" is likewise no more than a conclusion. Given that it is not self-evident that the alleged actions were taken to defraud the government, Relator's mere conclusory statements do not make his allegations plausible. As such, it is unreasonable for the Court to draw the inference from Relator's allegations that Roedel Parsons produced a false claim or engaged in a fraudulent course of conduct. Accordingly, Relator fails to state a claim under Rule 12(b)(6).

### ii. Relator Fails to Plead Fraud with Particularity under Rule 9(b)

Relator's pleadings also fail to meet the heightened Rule 9(b) pleading requirements for fraud. Under Rule 9(b), "a plaintiff must state the factual basis for the fraudulent claim with particularity and cannot rely on speculation or conclusional allegations." *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008). In general, such a statement should include "the time, place, and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Grubbs*, 565 F.3d at 186 (quoting *Russell*, 193 F.3d at 308). Here, Relator fails to identify any specific false claims, statements, or records, and instead alleges that "[e]ach, every, and any" of Roedel Parsons' legal

12

bills, time sheets, and other documents submitted within the scope of its representation of LSU constituted a false claim.[23] This plainly fails to meet Rule 9(b)'s particularity requirement. Relator fails to refer with particularity to any false claims, statements, or records related to Roedel Parsons' refusal to settle claims, or Roedel Parsons' later work on cases arising out of denied claims. While Relator attached as exhibits several invoices prepared by Roedel Parsons for its work on behalf of LSU,[24] Relator does not specify how these invoices are false, or otherwise provide any meaningful discussion of their contents. Relator's only reference to the invoices states that they constitute "proof that Roedel Parsons was submitting bills for and being paid for legal work as said work was being done."[25] Relator points to these invoices solely for the purpose of showing Roedel Parsons' knowledge that the government was paying for its services.[26] In sum, Relator fails to identify the "who, what, when, where, and how" regarding a single false claim, statement, or record. *Thompson*, 125 F.3d at 903 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

---

[23] *Id.*

[24] *See* R. Doc. 25-11 at 2-4.

[25] R. Doc. 32 at 3.

[26] *Id.*

In the context of a section 3729(a)(1)(A) claim, when a showing of presentment of claims to the government is required,[27] the Fifth Circuit provides Rule 9(b) can be satisfied, even in the absence of allegations regarding details of submitted false claims, when the complaint alleges "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Still, "[t]his does not absolve [the relator] of the burden of otherwise sufficiently pleading the time, place, or identity details of the traditional standard, in order to effectuate Rule 9(b)'s function of fair notice and protection from frivolous suits." *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed. Appx. 890, 895 (5th Cir. 2013). In *Grubbs*, the Fifth Circuit held that the absence of identification of specific bills was not fatal to a relator's claim when the relator described in detail how two defendants solicited the relator to participate in a scheme to defraud the government. *Grubbs*, 565 F.3d at 191-92. Specifically, in *Grubbs*, the Fifth Circuit observed:

> The complaint sets out the particular workings of a
> scheme that was communicated directly to the relator by
> those perpetrating the fraud. [Relator] describes in
> detail, including the date, place, and participants, the
> dinner meeting at which two doctors in his section

---

[27] This discussion is relevant only to a section 3729(a)(1)(A) claim because section 3729(a)(1)(B) claims do not require proof of presentment of a claim to the government. *See Allison Engine, Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008).

> attempted to bring him into the fold of their on-going
> fraudulent plot. He alleges his first-hand experience of
> the scheme unfolding as it related to him, describing how
> the weekend on-call nursing staff attempted to assist him
> in recording face-to-face physician visits that had not
> occurred. Also alleged are specific dates that each
> doctor falsely claimed to have provided services to
> patients and often the type of medical service or its
> Current Procedural Terminology code that would have been
> used in the bill.

*Id.* Here, by contrast, Relator's pleadings contain sweepingly conclusory allegations that are devoid of factual details. Relator provides no reliable indicia that a fraudulent scheme existed, and therefore no basis to infer that Roedel Parsons submitted false claims. Moreover, unlike in *Grubbs*, here, Relator already has access to at least several of Roedel Parsons' invoices.[28] *Id.* at 192. Accordingly, Relator's pleadings fail to meet Rule 9(b)'s particularity requirement.

### B. Defendant's Alleged Double-Billing Practices

Relator's second theory is that Roedel Parsons presented false claims when it billed the government for the work of two attorneys when only one was needed. In other words, Relator alleges that Roedel Parsons billed the government for unnecessary services. Relator's pleadings provide no factual basis to support a plausible inference that the provision of two attorneys was unnecessary. Relator alleges that, because "they were not reasonable or

---

[28] *See* R. Doc. 25-11 at 2-4.

necessary despite [Roedel Parsons] representing said billings as being necessary and proper,"[29] the billings were knowingly false. With the exception of Relator's conclusory statements that the billings were "knowingly false," the only basis on which Relator seems to support this claim is that "[a]s attorneys, being charged with the knowledge of the law, rules and regulations, the Roedel Parsons expropriation team members ... knew that their billings ... were false and would result in payments to which they were not entitled...."[30] Relator also lists a number of filings by Roedel Parsons that he conclusorily asserts reflect false billings.[31] In addition, Relator provides documentation showing joint appearances

---

[29] R. Doc. 32 at 2.

[30] *Id.* at 2-3.

[31] In his First Amended Complaint, Guth provides the following list of filings in Orleans Parish Civil District Court related to case 2010-8897, which he purports evidence Roedel Parsons' "intentional and purposeful knowing conspiracy to defraud the government by generating false billings":
    5/6/13 Response Memorandum to Recusal Motion  Terry Dunlevy
    5/23/13 Recusal Hearing  Terry Dunlevy and Shelley McGlathery
    6/28/13 LSU's Exceptions To Guth RICO Petition  Luke Piontek
    7/29/13 Motion To Strike Guth Memorandum  Luke Piontek
    8/15/13 Exceptions to Guth RICO Petition  Luke Piontek
    9113113 Joint Motion to Quash  Christian Rhodes
    10/1/13 Motion For Contempt  Christian Rhodes
    10/28/13 Exceptions hearing  Luke Piontek and Shelley McGlathery
*Id.* at 1-2 (errors in original).

16

by two Roedel Parsons attorneys on three occasions.[32] Relator alleges no further facts to support this claim.

These allegations are woefully insufficient to state a claim under Rule 12(b)(6). To be clear, Relator does not allege that the bills contained inaccuracies or that Roedel Parsons billed for work it did not perform. While billing for unnecessary services can form the basis of a false claim under the FCA, *see Grubbs*, 565 F.3d at 190, Relator fails to allege facts that can support an inference that the provision of two attorneys by Roedel Parsons was unnecessary or that the work itself was unnecessary. Instead, Relator alleges conclusorily that the bills were false because the services billed for were unnecessary. Having more than one lawyer appear on behalf of a client is not uncommon, and it is not self-evident here that the provision of two attorneys was unnecessary. Indeed, expropriation proceedings can be complex matters in which the participation of more than one attorney for a party is entirely reasonable. To conclude that it is plausible that Roedel Parsons' provision of two attorneys was unnecessary based on the face of Relator's pleadings would require the Court to draw an unreasonable inference.

Accordingly, Relator fails to state a claim as to Roedel Parsons' alleged double-billing practices.

---

[32] R. Doc. 1-1 at 26-28.

**C. Defendant's Alleged Failure to Reimburse the Government under 31 U.S.C. § 3729(a)(1)(G)**

Relator alleges that Roedel Parsons violated the provision of the FCA that prohibits "reverse false claims." This section makes liable any person who

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(G). The forbidden conduct "is called a reverse false claim because the action of the defendant results not in improper payment to defendant from the Government, but rather no payment to the Government when payment is otherwise obligated." *Dow Chem. Co.*, 343 F.3d at 329. A claim under section 3729(a)(1)(G) requires (1) that the defendant had an obligation to pay money to the government, (2) that the defendant used a false statement to avoid or decrease that obligation, (3) that the false statement was material, and (4) that the defendant made the false statement knowingly. *See United States ex rel. Ramadoss v. Caremark, Inc.*, 586 F.Supp.2d 668, 685 (W.D. Tex. 2008).

Here, Relator fails to plead a violation of this section with particularity because he has not identified an obligation that would require Roedel Parsons to pay money to the government within the meaning of this provision. Relator's First Amended Complaint attempts to bootstrap a claim under this provision by alleging that

18

Roedel Parsons' double billings created an obligation to refund the double payments. In *United States ex rel. Marcy v. Rowan Cos.*, the Fifth Circuit noted that

> [t]he reverse false claims act does not extend to potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) and which do not arise out of an economic relationship between the government and the defendant (such as a lease or a contract or the like) under which the government provides some benefit to the defendant wholly or partially in exchange for an agreed or expected payment or transfer of property by (or on behalf of) the defendant to (or for the economic benefit of) the government.

520 F.3d 384, 391 (5th Cir. 2008) (quoting *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 657 (5th Cir. 2004)).

Relator's claim is foreclosed by the Fifth Circuit's reasoning in *Marcy*. Relator's claim is predicated on "potential or contingent obligations to pay the government [amounts] which have not been levied or assessed (and to which no formal proceedings to do so have been instituted)." *Id.* Further, Roedel Parsons does not have a relationship with the government contemplated by this provision. Roedel Parsons was to provide legal services to LSU and to be paid by LSU from Community Development Block Grant funds awarded to the City of New Orleans. Roedel Parsons does not have a contractual relationship with the government under which the government confers benefits on the firm in exchange for an agreed payment of money. Accordingly, Relator fails to plead a violation of section 3729(a)(1)(G) by Roedel Parsons.

**E. Defendant's Alleged Conspiracy under 31 U.S.C. § 3729(a)(1)(C)**

Finally, Relator alleges an FCA conspiracy violation. Section 3729(a)(1)(C) imposes liability on any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)" of section 3729(a)(1). Given that Relator's pleadings purport to allege violations only of section 3729(a)(1)(A), (B) and (G), a violation of section 3729(a)(1)(C)'s conspiracy provision must stem from one of these allegations. In order to prove a False Claim Act conspiracy, the Fifth Circuit requires a relator to show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). Rule 9(b)'s particularity requirements apply to claims brought under the FCA's conspiracy provision such that "a plaintiff alleging a conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts ... taken in furtherance of the conspiracy.'" *Grubbs*, 565 F.3d at 193 (quoting *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1097 (D.C. Cir. 2008)).

Relator's allegations are wholly insufficient to state a claim under section 3729(a)(1)(C). Relator points to several acts

20

purportedly taken in furtherance of a conspiracy--*e.g.*, duplicative, false billings, but these allegations fall short for the reasons the Court has already identified in this opinion. Furthermore, Relator fails to allege that an unlawful agreement existed. Instead, Relator's argument is essentially that because Roedel Parsons' attorneys knew of Relator's allegations of fraud, Roedel Parsons' attorneys must have "discussed the allegations that it was engaged in fraudulent conduct."[33] In another example, Relator merely alleges that a Roedel Parsons' "attorney consulted with other attorneys from [its] expropriation team ... in an intentional and purposeful and knowing conspiracy to defraud the government by generating false billings...."[34] These allegations are purely speculative and conclusory, and they fail to allege the existence of an unlawful agreement. Roedel Parsons' attorneys' discussion of the allegations against the firm, or consultation about ongoing matters, does not support an inference of an unlawful agreement.

   Accordingly, Relator fails to state a claim under section 3729(a)(1)(C).

---

   [33] R. Doc. 32 at 4.

   [34] *Id.* at 2.

## IV.   CONCLUSION

For the foregoing reasons, Roedel Parsons' motion to dismiss is GRANTED and Relator's claim is DISMISSED.


New Orleans, Louisiana, this 18th day of December, 2014.


_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE